# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NOVINGER'S, INC.,** | : | CIVIL ACTION NO. 1:18-CV-1145 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **A.J.D. CONSTRUCTION CO., INC.,** | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Novinger's, Inc. ("Novinger's") commenced this action against defendant A.J.D. Construction Co., Inc. ("A.J.D."), alleging breach of contract and *quantum meruit*. A.J.D. moves to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, to transfer this case to the United States District Court for the District of New Jersey under 28 U.S.C. § 1404(a). We will deny A.J.D.'s motion.

## I. Factual Background & Procedural History[1]

The facts are largely undisputed for purposes of the instant motion. Novinger's is a Pennsylvania corporation with its principal place of business in Harrisburg, Pennsylvania. (Doc. 20-1, Ex. A ¶ 2). Novinger's specializes in the fabrication and installation of interior and exterior wall systems and ceilings as well as spray fireproofing. (Id. ¶ 3). A.J.D. is a New Jersey corporation headquartered in

---

[1] The factual background is primarily derived from the multiple affidavits submitted by the parties. When other pertinent facts are required, we look to the parties' pleadings and attached filings.

Leonardo, New Jersey. (Doc. 1 ¶ 10; Doc. 1-2 ¶ 2). In 1997, A.J.D. applied for and received a certificate of authority to do business in Pennsylvania as a "foreign business corporation" with a proposed registered office in Chester, Pennsylvania. (See Doc. 20-1 at 37-38; Doc. 7-11 ¶ 4). A.J.D. avers that this registration was related to a particular construction project in Pennsylvania that was completed around 2000, and that A.J.D. has not otherwise engaged in business in the Commonwealth since that time and maintains no physical presence there. (Doc. 7-11 ¶¶ 3-4).

In 2014, A.J.D. contracted with Journal Square I Urban Renewal, LLC ("Journal Square") to provide labor and materials for an apartment building project in New Jersey known as "Journal Squared – Tower I" (the "Project"). (Doc. 7 ¶ 13; Doc. 7-2 at 2 ¶ 2; Doc. 31-1 ¶ 2). On July 30, 2014, Novinger's entered into a subcontract with A.J.D. whereby Novinger's agreed to fabricate and install a panelized exterior load-bearing wall system on a portion of the Project. (Doc. 1-2 ¶ 4; Doc. 7 ¶ 17; Doc. 20-1, Ex. A ¶ 6). Novinger's executed the subcontract in Pennsylvania and A.J.D. subsequently signed the agreement in New Jersey. (Doc. 7-2 at 3 ¶ 4; Doc. 19 ¶ 18). As part of the subcontract, Novinger's was required to keep field fabrication to an "absolute minimum." (Doc. 20-1, Ex. A ¶ 8). Novinger's maintains that this provision caused Novinger's to fabricate the exterior panels at its plant in Pennsylvania and deliver them to Journal Square in New Jersey. (Id. ¶ 9; Doc. 1-2 ¶ 5). At the work site in New Jersey, A.J.D. allegedly required Novinger's to reinstall perimeter netting and safety cables daily. (Doc. 1-2 ¶ 12). Novinger's asserts that it complied but that such a task was beyond the scope of the agreement. (Id.; Doc. 19 ¶ 25). Novinger's refused to complete the exterior wall

2

system on the penthouse section of the Project, believing that this work likewise exceeded the subcontract's requirements. (Doc. 7 ¶ 20; Doc. 19 ¶ 20; Doc. 21-1, Ex. A ¶ 11).

Novinger's alleges that it satisfied its contractual obligations on April 7, 2017. (Doc. 1-2 ¶ 7). A.J.D. paid $8,856,294.80 to Novinger's by sending checks to its offices in Pennsylvania, but Novinger's contends it is still owed $568,987 under the subcontract. (Id. ¶ 9; Doc. 30-1, Ex. A ¶ 6). Novinger's also claims it is owed $171,352 for the daily perimeter netting and safety cable installation, as well as an additional $119,946 for having to clean the work area in New Jersey after other subcontractors failed to do so. (Doc. 1-2 ¶¶ 12-13; Doc. 7 ¶¶ 25-26). In May 2018, Novinger's filed suit against A.J.D. in the Court of Common Pleas of Dauphin County, Pennsylvania, to recover the money it claims A.J.D. owes. (See generally Doc. 1-2). A.J.D. removed the case to this court. A.J.D. now moves to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this case to the United States District Court for the District of New Jersey. The court ordered the parties to provide supplemental briefing on the issue of specific personal jurisdiction. A.J.D.'s motion is now fully briefed and ripe for disposition.

## II. **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor. Pinker v. Roche Holdings Ltd., 292 F.3d

3

361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. See Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. Id.; Carteret Sav. Bank, 954 F.2d at 142 n.1. When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See Metcalfe, 566 F.3d at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

### III. Discussion

A.J.D. first argues that personal jurisdiction is lacking due to insufficient contacts with Pennsylvania. Alternatively, in the event the court determines it does have personal jurisdiction, A.J.D. contends that venue more properly lies in the District of New Jersey. We will address these issues *seriatim*.

#### A. Personal Jurisdiction Over A.J.D.

Whether a court may assert personal jurisdiction over an out-of-state defendant must be tested against both statutory and constitutional standards. Clark v. Matsushita Elec. Indus. Co., 811 F. Supp. 1061, 1065 (M.D. Pa. 1993).

4

Pennsylvania's Long-Arm Statute grants jurisdiction to the full extent allowed by the United States Constitution. 42 PA. CONS. STAT. §§ 5308, 5322(b). Thus, under Pennsylvania law, the inquiry into whether the court may assert personal jurisdiction over a defendant is the same as the constitutional query. Due process requires a plaintiff to show that the out-of-state defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citations and quotation marks omitted). In determining whether the defendant has minimum contacts with a forum, courts examine "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). If it is determined that the defendant had sufficient contacts with the forum state, then the defendant had fair warning that it may be subject to suit there. Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).

There are two types of personal jurisdiction: general and specific. D'Jamoos *ex rel.* Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009). A court may exercise general jurisdiction over a foreign corporation when that corporation's "affiliations with the state are so continuous and systematic as to render [it] essentially at home in the forum state." Daimler AG v. Bauman, 571 U.S. 117, 122 (2014). A corporation is typically "at home" where it operates its principal place of business or where it incorporates. See id. at 139. Specific jurisdiction, *per contra*, allows the court to hear claims arising out of or relating to the defendant's purposeful contacts with the state. Helicopteros Nacionales de Colombia, S.A.

5

v. Hall, 466 U.S. 408, 414 n.8 (1984).  A federal court may also exercise personal jurisdiction over a defendant who consents to the jurisdiction of the court, which has "long [been] upheld as constitutional." Gorton v. Air & Liquid Sys. Corp., 303 F. Supp. 3d 278, 295 (M.D. Pa. 2018) (quoting Bane v. Netlink, Inc., 925 F.2d 637, 641 (3d Cir. 1991)).  Novinger's asserts that the court has personal jurisdiction over A.J.D. because A.J.D. consented to general jurisdiction, or, alternatively, because specific jurisdiction exists.[2]

### 1. *Consent to General Personal Jurisdiction*

Novinger's argues that A.J.D. consented to general jurisdiction in Pennsylvania by registering to do business in the Commonwealth as a foreign corporation.  Novinger's relies on, *inter alia*, Bane v. Netlink, 925 F.2d 637 (3d Cir. 1991), for support.  The court in Bane held that an out-of-state corporation that registered to do business in the Commonwealth was subject to personal jurisdiction in Pennsylvania courts pursuant to 42 PA. CONS. STAT. § 5301(a)(2)(i) and (ii).  Bane, 925 F.2d at 640-41.

After Daimler, however, many courts have held that mere registration by a corporation to do business in a foreign state is insufficient to establish consent to general jurisdiction therein.  See Genuine Parts Co. v. Cepec, 137 A.3d 123, 144-45 & n.119 (Del. 2016) (collecting cases).  District courts within this circuit disagree over the viability of consent by registration: some courts have found Section 5301 notice

---

[2] Novinger's does not claim that A.J.D. is subject to general jurisdiction under Daimler's requirements, thus we need not address this issue.

6

to registering corporations sufficient to establish consent to general jurisdiction, see Gorton, 303 F. Supp. 3d at 297; Bors v. Johnson & Johnson, 208 F. Supp. 3d 648, 654-55 (E.D. Pa. 2016), while others have held that registration alone is insufficient, see AstraZeneca AB v. Mylan Pharm., Inc., 72 F. Supp. 3d 549, 556 (D. Del. 2014); Spear v. Marriott Hotel Servs., Inc., No. 15-CV-6447, 2016 WL 194071, at *2 (E.D. Pa. Jan. 15, 2016). We need not address whether A.J.D. consented to general jurisdiction in Pennsylvania by registering as a foreign corporation or whether Pennsylvania's statutes are constitutional after Daimler because we find that specific jurisdiction exists.

## 2. *Specific Personal Jurisdiction*

Specific jurisdiction requires three elements: (1) the party purposefully directed its activities at the forum; (2) the cause of action arose out of or relates to at least one of those activities; and (3) if the first two parts of the test are met, the court may consider whether the exercise of jurisdiction comports with notions of fair play and substantial justice. See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007) (citation omitted). A district court must consider the totality of the circumstances when determining personal jurisdiction for a breach of contract. Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006) (citation omitted). The mere formation of a contract, without more, does not constitute sufficient minimum contacts between an out-of-state defendant and the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985). Instead, the court must examine the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, and the course of dealing between the parties

7

when determining if minimum contacts exist. Id. at 479. Courts should ask whether the defendant's contacts with the forum were "instrumental in either the formation of the contract or its breach." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)). Physical presence during negotiations has become less determinative with the advance of modern technology. Burger King, 471 U.S. at 476. But mail and telephone communications sent by the defendant into the forum may be taken into account. Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (citing Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990)). Additional considerations include where the services under the contract were performed and whether the challenging party should have known the services would be performed there. See Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).

As to the first prong, we find that A.J.D. purposefully directed activity at Pennsylvania in a manner sufficient to support specific jurisdiction. The contract was negotiated in part through the use of telephone and email communication between A.J.D. and Novinger's at their respective offices in New Jersey and Pennsylvania. Even though Novinger's went to New Jersey to introduce itself, A.J.D. still directed multiple communications to Novinger's in Pennsylvania regarding negotiation and performance of the contract. Importantly, the terms of the agreement obligated Novinger's to perform much of its work in Pennsylvania. See id. The contract required that the panels be "factory formed and complete" and that on-site fabrication was to be kept to an "absolute minimum," and A.J.D.

8

knew Novinger's would perform this work at its factory in Pennsylvania. (Doc. 20-1, Ex. A ¶¶ 7-8). A.J.D.'s project manager travelled to Pennsylvania to inspect the panels in Novinger's' fabrication shop. Finally, the terms of the agreement required pre-installation testing of the panels, all of which was—predictably—performed in Pennsylvania. Contrary to A.J.D.'s contention of mere "unilateral activity" by Novinger's, these contract provisions and communications demonstrate that A.J.D. purposefully directed activity at Pennsylvania.

A.J.D. relies on Freedom Forge Corp. v. Jersey Forging Works, Inc., 549 F. Supp. 99 (M.D. Pa. 1982), for the proposition that mere assembly of the panels in Pennsylvania and transportation of same to New Jersey does not establish minimum contacts. Freedom Forge is easily distinguishable. In that case, the court held that the "thin thread" of sending six purchase orders into Pennsylvania was not enough to create sufficient minimum contacts. Freedom Forge Corp., 549 F. Supp. at 101. As noted above, A.J.D. had much more significant contacts with Pennsylvania. Furthermore, where the defendant in Freedom Forge merely sent purchase orders, the instant contract expressly required off-site panel construction, which Novinger's logically would perform at its Pennsylvania factory. In the matter *sub judice*, an agent of A.J.D. also visited the Pennsylvania shop to inspect the panels during the contract's performance, whereas in Freedom Forge no "agent or officer of the defendant entered Pennsylvania in relation to the contract." Id.

Turning to the second prong for specific jurisdiction, we likewise find that the cause of action arises out of and is related to activities A.J.D. directed at the forum state. According to Novinger's, a significant portion of its breach of contract

9

claim involves alleged underpayment for fabrication that was implicitly directed to take place in Pennsylvania. Furthermore, the alleged underpayment that induced the breach of contract claim was sent to Pennsylvania, causing an impact in the forum state on a Pennsylvania corporation. This level of connection and relatedness between the defendant's contacts and the plaintiff's cause of action is sufficient for specific jurisdiction purposes. See O'Connor, 496 F.3d at 323-24.

As the first two parts of the test are satisfied, we turn to whether exercising jurisdiction over A.J.D. would comport with "traditional notions of fair play and substantial justice." See id. at 324 (quoting Int'l Shoe, 326 U.S. at 316). Once minimum contacts are established, there is a presumption of constitutionality in favor of the plaintiff and the defendant "must present a *compelling* case that the presence of some other consideration would render jurisdiction unreasonable." Burger King, 471 U.S. at 477 (emphasis added). Factors to consider include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining efficient relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. O'Connor, 496 F.3d at 324 (citing Burger King, 471 U.S. at 477).

A.J.D. cannot rebut the presumption of constitutionality of exercising specific jurisdiction. First, A.J.D. is located in New Jersey, a few hours from the Middle District of Pennsylvania. See O'Connor, 496 F.3d at 324-25; Grand Entm't Grp., 988 F.2d at 483-84. Second, Pennsylvania has an interest in adjudicating the dispute: Novinger's is a Pennsylvania corporation and the Commonwealth has a "manifest

interest in providing effective means of redress" when an out-of-state corporation contracts with its residents regarding in-state manufacturing. Cf. O'Connor, 496 F.3d at 325 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). This is also not case where all the evidence and witnesses are located in a different forum. Finally, Novinger's, as plaintiff, has an interest in being able to litigate where it is based and where its witnesses reside, *viz.*, "obtaining convenient and effective relief." Burger King, 471 U.S. at 477. Because A.J.D. cannot rebut the presumption of fair play and substantial justice, we conclude that this court has specific personal jurisdiction over A.J.D.

### B. Venue Transfer Under 28 U.S.C. § 1404(a)

A.J.D. moves in the alternative to transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). A district court may transfer a case to any district "where it might have been brought" if the transfer is convenient for the parties and witnesses and is "in the interest of justice." 28 U.S.C. § 1404(a). But a "plaintiff's choice of venue should not be lightly disturbed." Jumara v. State Farm Ins. Co., 55. F.3d 873, 879 (3d Cir. 1995). In determining whether a change in venue would be in the interest of justice, courts balance the private and public interests by considering: (1) the plaintiff's choice of forum; (2) the defendant's forum preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their physical and financial condition; (5) the convenience of the witnesses to the extent of their unavailability for trial in one of the fora; (6) the location of documents and other evidence; (7) the enforceability of the judgment; (8) practical considerations regarding trial; (9) relative administrative difficulty in the two fora due to court

congestion; (10) the interest in deciding local controversies; (11) the public policies of the two fora; and (12) in diversity cases, the court's familiarity with the applicable state law.  Id. at 879-80.

Transfer to the District of New Jersey, while permissible, is not in the interest of justice.  This is not a case where it would be more convenient to all parties and witnesses if venue were transferred.  See High River Ltd. P'ship v. Mylan Labs., Inc., 353 F. Supp. 2d 487, 497-98 (M.D. Pa. 2005).  Novinger's is a citizen and resident of Pennsylvania and its key witnesses are located here.  Moreover, the short distance between the Middle District of Pennsylvania and the District of New Jersey militates against transfer.  See On-Time Staffing, LLC v. Flexible Staffing Sols., Inc., No. 06-3951, 2007 WL 1234978, at *7 (D.N.J. Apr. 25, 2017).  And any relevant documentation or exhibits for the Project and the job site could be photographically or electronically reproduced for a jury in Pennsylvania.  See Behavioral Health Indus. News, Inc. v. Mental Health Sys., Inc., No. 16-CV-1874, 2017 WL 1738363, at *6 (M.D. Pa. May 4, 2017) (Conner, C. J.); Busch v. Sea World of Ohio, 95 F.R.D. 336, 340-41 (W.D. Pa. 1982).

As to court congestion, Novinger's asserts that the statistics provided by the Administrative Office of the United States Courts demonstrate an average of 48.7 months for a civil case to go to trial in the District of New Jersey compared to an

average of 34.8 months in the Middle District of Pennsylvania.[3] Even if New Jersey law were to apply in this case, this court is capable of applying New Jersey contract law, a task that is not unusual for a district court situated in central Pennsylvania. Finally, although New Jersey has a monetary interest in the Project due to financing by a state authority, A.J.D.'s burden is not met by the strength of one factor alone. See Behavioral Health Indus. News, Inc., 2017 WL 1738363, at *7. On balance, the factors do not support a change in venue.

## IV. Conclusion

We will deny A.J.D.'s motion (Doc. 7) to dismiss for lack of personal jurisdiction or alternatively to transfer venue. This case will remain in the Middle District of Pennsylvania. An appropriate order will issue.

       /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: March 25, 2019

---

[3] The numbers for the most recent 12-month period ending on December 31, 2018, are slightly different than the figures Novinger's provides; nonetheless, the December 2018 statistics are similar and still weigh in favor of Pennsylvania. See https://www.uscourts.gov/sites/default/files/fcms_na_distcomparison1231.2018.pdf.